UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Bankruptcy No. 17-50696 |
| DIGNITY RESIDENTIAL LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY, OR IN THE ALTERNATIVE FOR DISMISSAL OF THE CASE FOR LACK OF GOOD FAITH
(Summary Ejectment 127 South Longfellow Lane, Mooresville, NC 28117)

Philip and Patrice Salice ("Salices"), creditors in the above-captioned matter, by and through their undersigned counsel, hereby move the Court, pursuant to 11 U.S.C. §§ 362(d) and 1112(b), and Federal Rules of Bankruptcy Procedure 4001 and 9014, for relief from the automatic stay to permit the Salices to continue the state court summary ejectment proceeding to dispossess Debtor from the residential real property located at 127 South Longfellow Lane, Mooresville, NC 28117, or in the alternative for dismissal of this bankruptcy case for lack of good faith. (the "Motion").

In support of this Motion, the Salices respectfully represent as follows:

### JURISDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue of this Chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C.

§1408. The statutory predicate for the relief requested herein is Section 362(d) and Section 1112(b) of the Bankruptcy Code.

FACTS

1.    The Salices are individual citizens and residents of Mooresville, Iredell County, North Carolina.

2.    On information and belief, Debtor is a limited liability company organized and existing under the laws of the State of North Carolina, which lists its principal place of business as 127 South Longfellow Lane, Mooresville, North Carolina.

3.    On November 13, 2017 (the "Petition Date"), Debtor filed with this Court a voluntary petition for relief under Chapter 11 of Title 11 of the Bankruptcy Code. No Schedules or Statement of Financial Affairs or other papers have been filed in the case as of the filing of this Motion.

LEASE AND DEFAULT

4.    The Salices own real property located at 127 South Longfellow Lane, Mooresville, North Carolina (the "Property"). The Property is a single-family luxury residential home located on the waterfront on Lake Norman, North Carolina with a fair market value in excess of $3,000,000.00. It contains more than 9,000 square feet of living space and is located within the exclusive private country club community known as The Point. The Property requires membership in The Trump National Golf Club Charlotte located at The Point ("Membership Dues") as well as annual homeowners' association dues ("HOA Dues").

5.    On or about June 20, 2015, the Salices entered into that certain Residential Rental Contract ("Lease") with Debtor to lease to it the Property. The term of the Lease extended through and including July 31, 2016 and required monthly rental payments in the amount of $10,000.00. In the event Debtor "held over" past the Lease term, the Lease provided that it would become a month-to-month tenancy. The Lease provided that Reema Owens and Betty Davis were the permitted occupants of the Property. A true and accurate copy of the Lease is attached hereto as **Exhibit A** and incorporated herein by reference.

6.    Also on or about June 20, 2015, Salices entered into that certain Option to Purchase Contract ("Option"). The Option granted Debtor an option to purchase the Property, during the Lease term, for $3,172,000.00. By its term, the Option expired on July 31, 2016. A true and accurate copy of the Option is attached hereto as **Exhibit B** and incorporated herein by reference.

7.    The Option further required Debtor to pay "option fees" and to pay other expenses, including the Membership Dues and the HOA Dues associated with the Property.

8.    The Option by its terms states that it is governed by North Carolina General Statutes §47G, "Option to Purchase Contracts Executed with Lease Agreements."

9.    On or about December 14, 2015, the Salices and Debtor entered into an amendment to the Option that extended the deadline to pay a certain option fee until February 1, 2016 (First Amendment"). A true and accurate copy of the First Amendment is attached hereto as **Exhibit C** and incorporated herein by reference.

10.    As the end of the initial one-year Lease term drew near, it appeared Debtor had not secured sufficient funding to purchase the Property and would not be able to close on the Property by the July 31, 2016 deadline. The Salices and Debtor entered into a second amendment to the Option dated May 13, 2016 ("Second Amendment"). The Second Amendment extended the term of the contract through May 31, 2017 and required additional option fees. A true and accurate copy of the Second Amendment is attached hereto as **Exhibit D** and incorporated herein by reference.

11.    On April 26, 2017, the Salices, through their attorney, sent notice to Debtor and Debtor's attorney, and the Salices hand delivered the email to Debtor, advising that the Lease would terminate on May 31, 2017 and any purchase of the property would have to close no later than May 31, 2017. ("Termination Notice"). A true and accurate copy of the Termination Notice is attached hereto as **Exhibit E** and incorporated herein by reference.

12.    Debtor did not close on the Property by May 31, 2017 and did not vacate the Property. In further discussion, the Salices agreed to allow Debtor to remain at the Property through July 31, 2017 in exchange for further rent and option fees. The Salices made it clear to Debtor this was the last extension of the Lease and the Option and no further extensions would be granted. In email correspondence to Debtor dated July 5, 2017, the Salices acknowledged payment of the further option fee and reiterated that all agreements would terminate as of July 31, 2017, stating, "[p]lease be advised there will not be an extension given for one additional day for any reason." A true and accurate copy of the email

correspondence is attached hereto as **Exhibit F** and incorporated herein by reference.

13.     Debtor did not close the purchase of the Property on or before July 31, 2017.

14.     Debtor has not vacated the Property, despite the Salices' demand for possession of the Property.  The Salices have not agreed to any extension of the Lease or the Option beyond July 31, 2017.  Debtor is in wrongful possession of the Property as a holdover tenant and the Salices are entitled to have Debtor ejected from the Property.

15.     In August, 2017, the Salices commenced a summary ejectment proceeding in Iredell County Small Claims Court.

16.     After Debtor received a continuance of an initial hearing date, the magistrate treated the Option as a contract for deed or land sales contract and denied the petition for summary ejectment, contrary to the specific provisions of North Carolina General Statutes §47G-1 *et. seq.*, which provide that an option executed with a lease is distinguishable from a contract for deed governed by North Carolina General Statutes §47H.  Moreover, North Carolina General Statutes §47G-3 states that the provisions of Chapter 42 of the General Statutes apply to covered lease agreements, and North Carolina General Statutes §47G-5 contemplates summary ejectment proceedings to recover the possession of the lease premises.

17.     Accordingly, the Salices appealed the magistrate's judgment to the Iredell District Court for a *de novo* hearing.  The District Court granted summary

judgment in favor of the Salices on September 19, 2017, and issued a Writ of Possession.

18.    On September 22, 2017, Debtor filed an *ex parte* Emergency Motion for Stay of Execution of Writ of Possession and Motion to Set Aside on the allegation that Debtor's counsel was not served with the Motion for Summary Judgment.    The District Court granted the stay pending an October 9, 2017, hearing, which was also continued to October 23, 2017.

19.    Although the Salices tendered proof of service through affidavit testimony, the District Court orally ruled the summary judgment should be set aside and the matter set for trial on November 16, 2017. No written order has been entered on that ruling.

20.    As of the Petition Date, no payment has been made in consideration for the use and occupancy of the Property for the months of August, September, October and November, 2017.    Further, Debtor has denied the Salices' right to access to inspect the Property.    Debtor's unlawful occupancy of the Property has prevented the Salices from listing and showing the Property to potential buyers.

21.    In order to obtain possession of the Property, the Salices must obtain relief from the automatic stay.

## RELIEF REQUESTED

22.    Section 362(d)(1) of the Bankruptcy Code provides that the automatic stay may be lifted for "cause", including the lack of adequate protection of interest in property or lack of equity where the property is not necessary for an effective

reorganization. As set forth herein above, the Salices contend that the foregoing constitutes "cause" for lifting the automatic stay.

23. Debtor has no interest in the Property other than a bare possessory interest. Both the Lease and the Option expired by their own terms prepetition on July 31, 2017. Accordingly, Debtor does not have a leasehold interest to cure and assume in this Chapter 11 case, or an executory option contract to cure and assume in this Chapter 11 case.

24. Debtor likewise does not have any "equity" in the Property inasmuch as it does not own the Property, and lost any equity of redemption with the expiration of the Option on July 31, 2017. Notably, the Option states that the option fees were non-refundable in the event that Debtor did not timely exercise its Option to purchase. The Option also states that Debtor would not be entitled to any compensation for any improvements made to the Property by Debtor.

25. Finally, the Property is not necessary for Debtor's effective reorganization. Indeed, what does Debtor have to reorganize? Upon information and belief, Debtor owns no real or personal property, conducts no business operations, has no enterprise value, no employees, no vendors, no income and no expense, and thus no prospect of reorganization. Debtor was organized just days before entering into the lease, and upon information and belief was so organized for the express and sole purpose of renting the Property. Upon information and belief, the Debtor does not even have a checking account from which it ever paid rent during the entire two years under Lease. Rent payments were always made by bank check, personal check of Reema Owens, wire transfer from Ms. Owens

attorney or an account from an entity known as "Discovery Healthcare Holdings Corp. Investor Account." The Lease and Option appear to be the only business conducted by Debtor, and both have expired prepetition.

26.     Upon information and belief, Debtor has attempted to stifle a two party dispute with the automatic stay of bankruptcy. Debtor's Chapter 11 petition is nothing more than an attempt to avoid trial of a summary ejectment proceeding which has been pending for over four months merely two days before the scheduled trial date. Debtor has no prospect for reorganization, has no property rights to protect and is abusing the Chapter 11 process to further delay the legal rights of the Salices to their real property. Based upon the foregoing, cause exists to lift the automatic stay to permit the Salices to continue to trial in Iredell County District Court for a determination of summary ejectment.

27.     Alternatively, cause exists to dismiss this Chapter 11 case as an abuse of process and bad faith filing. Section 1112(b) of the Bankruptcy Code provides that the Bankruptcy Court *shall* convert or dismiss a Chapter 11 case for cause unless the appointment of a trustee or examiner would be the better course in the best interest of creditors, the estate and debtor. 11 U.S.C. §1112(b). The Fourth Circuit has held that a "good faith filing" requirement is implicit in Section 1112(b) of the Bankruptcy Code, and that the Bankruptcy Court has the power to dismiss a case "for cause" if the debtor lacks good faith in filing of the petition. *In re Carolin Corporation*, 886 F.2d 693, 699-700 (4th Cir. 1989). The Fourth Circuit further held that a determination of good faith should examine both the objective futility of any

possible reorganization and the subjective bad faith of the debtor in filing the case. *Id.* at 701.

28.     With respect to the objective futility test, the Salices are aware of no business operations of Debtor which require bankruptcy protection or a breathing spell for reorganization.  Further, the Salices believe the only business purpose of Debtor was to lease the Property.  Inasmuch as the Lease and the Option expired by their own terms prepetition, Debtor has no property right to protect in a Chapter 11 case.  The Salices are not aware of any other assets owned by Debtor.

29.     As for the subjective bad faith, or lack of good faith in filing test, the Salices believe the sole reason for the emergency bare bones petition filing on November 13, 2017 was to avoid the pending trial date before the Iredell County District Court on the Salices' summary ejectment action set for November 16, 2017.

30.     Upon information and belief, the Debtor's Chapter 11 filing meets both the objective and subjective test for lack of good faith, warranting dismissal for lack of good faith.

WHEREFORE, the Salices respectfully request as follows:

1.     The Court enter an order modifying and lifting the automatic stay provided by Section 362(a) of the Bankruptcy Code and waiving the 14 day stay pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3) to permit the Salices to exercise all of its remedies under North Carolina law as a landlord to seek summary ejectment of Debtor as a holdover tenant, including, without limitation,

allowing the Salices to request Iredell County District Court to re-set the trial on

the summary ejectment for the first available date upon entry of the order; and

    2.    The Court grant such other and further relief as the Court deems just

and proper.

This the 15th day of November, 2017.

/s/Ashley S. Rusher
Ashley S. Rusher, NCSB #14296
*Attorney for the Salices*

OF COUNSEL:

BLANCO TACKABERY
& MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Facsimile: (336) 293-9030
E-mail: asr@blancolaw.com

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

In re:                          )
                                )      Case No.  17-50696
DIGNITY RESIDENTIAL LLC,        )      Chapter 11
                                )      Judge: Laura T. Beyer
             Debtor.            )
                                )      **NOTICE OF HEARING**
                                )
                                )

**TAKE NOTICE** that Philip and Patrice Salice have filed papers with the Court to exercise all of its remedies under the Lease and North Carolina landlord tenant law (as defined in the Motion accompanying this Notice). A copy of these paper(s) is included with this Notice.

**Your rights may be affected.  You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case.  If you do not have an attorney, you may wish to consult one.**

If you do not want the court to grant the relief sought in the Motion, or if you want the court to consider your views on the Motion, you or your attorney must file a written response/objection explaining your position, **ON OR BEFORE NOVEMBER 27, 2017**.  Your response must be filed with the Bankruptcy Clerk at the following address:

United States Bankruptcy Court
401 West Trade Street
Charlotte, NC 28202

If you mail your request to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date stated above.

**On or before the date stated above for written responses, you must also mail or fax a copy of your written request to:**

Ashley S. Rusher
P.O. Box 25008
Winston-Salem, North Carolina 27114
Fax: (336) 293-9030

BTM:689747v1

      **Attend the hearing scheduled for November 29, 2017, at 9:30 a.m. in the U.S. Courthouse, 401 W. Trade Street, First Floor, Charlotte, North Carolina.**

Dated:  November 15, 2017.

/s/Ashley S. Rusher _____
Ashley S. Rusher, NCSB #14296
*Attorney for the Salices*

OF COUNSEL:
BLANCO TACKABERY
  & MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone:  336-293-9000
Fax:  336-293-9030

# EXHIBIT A

BTM:689747v1

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

## RESIDENTIAL RENTAL CONTRACT

RESIDENT: _____ DIGNITY RESIDENTIAL, LLC _____ ("Tenant")

OWNER: _____ PHILIP SALICE, PATRICE SALICE _____ ("Landlord")

REAL ESTATE MANAGEMENT FIRM: _____ NONE _____ ("Agent")

PREMISES: City: _____ MOORESVILLE _____ County: _____ MECKLENBURG _____ State of North Carolina
☒ Street Address: 127 S. LONGFELLOW LANE _____ Zip Code: 28117 _____
☐ Apartment Complex: _____ N/A _____ Apartment No. _____
☐ Other Description (Room, portion of above address, etc.): N/A _____

INITIAL TERM: Beginning Date of Lease: __08/01/2015__ Ending Date of Lease: __07/31/2016__

RENT: $ 10,000.00 _____ PAYMENT PERIOD: ☒ monthly ☐ weekly ☐ yearly ☐ other:_____

LATE PAYMENT FEE: $ _____ OR __5.000__ % of rental payment, whichever is greater
*(State law provides that the late fee may not exceed $15.00 or five percent (5%) of the rental payment, whichever is greater.)*
RETURNED CHECK FEE: $ _____ 25.00 _____ *(The maximum processing fee allowed under State law is $25.00.)*
SECURITY DEPOSIT: $ 10,000, See Lease/Purchase _____ to be deposited with: (check one) ☒ Landlord ☐ Agent
LOCATION OF DEPOSIT: (insert name of bank): WELLS FARGO BANK _____
BANK ADDRESS: 352 WILLIAMSON ROAD, MOORESVILLE,, NC 28117 _____

FEES FOR COMPLAINT FOR SUMMARY EJECTMENT AND/OR MONEY OWED (See paragraph 17) (NOTE: Landlord may
charge and retain only one of the following fees in addition to any court costs):
● COMPLAINT-FILING FEE: $ _____ OR _____ % of rental payment, whichever is greater *(Fee
   may not exceed $15.00 or five percent (5%) of the rental payment, whichever is greater.)*
● COURT APPEARANCE FEE: _____ % of rental payment *(Fee may not exceed ten percent (10%) of the rental payment.)*
● SECOND TRIAL FEE: _____ % of rental payment *(Fee may not exceed twelve percent (12%) of the rental payment.)*

PERMITTED OCCUPANTS (in addition to Tenant): Reema Owens, Betty Davis _____

CONTACT PERSON IN EVENT OF DEATH OR EMERGENCY OF TENANT (name and contact information): _____

    IN CONSIDERATION of the promises contained in this Agreement, Landlord, by and through Agent, hereby agrees to lease
the Premises to Tenant on the following terms and conditions:

    1. **Termination and Renewal:** EITHER LANDLORD OR TENANT MAY TERMINATE THE TENANCY AT THE
EXPIRATION OF THE INITIAL TERM BY GIVING WRITTEN NOTICE TO THE OTHER AT LEAST ____60____ DAYS PRIOR
TO THE EXPIRATION DATE OF THE INITIAL TERM. IN THE EVENT SUCH WRITTEN NOTICE IS NOT GIVEN OR IF THE
TENANT HOLDS OVER BEYOND THE INITIAL TERM, THE TENANCY SHALL AUTOMATICALLY BECOME A
____MONTH____ (PERIOD) TO ____MONTH____ (PERIOD) TENANCY UPON THE SAME TERMS AND
CONDITIONS CONTAINED HEREIN. THEREAFTER, THE TENANCY MAY BE TERMINATED BY EITHER LANDLORD OR
TENANT GIVING THE OTHER ____30____ DAYS WRITTEN NOTICE PRIOR TO THE LAST DAY OF THE FINAL PERIOD
OF THE TENANCY. *(EXAMPLE: Assume tenancy is a calendar month-to-month tenancy and 30 days advance written notice of
termination is required. Tenant desires to terminate lease as the end of the April period of the tenancy. Tenant would be required to
give landlord written notice no later than March 31st. If the written notice of termination were to be given to the Landlord on the 10th
of April, the notice would be effective to terminate the lease at the end of May rather than the end of April, since the monthly periods of
the tenancy expire on the last day of the month and the notice was not given 30 days prior to the end of April.)*

Page 1 of 7

North Carolina Association of REALTORS®, Inc.
Tenant Initials _____ Landlord Initials _____

STANDARD FORM 410 - T
Revised 7/2014
© 7/2014

Lake Realty, 19900 W. Catawba Avenue #103 Cornelius, NC 28031     Phone: (704)892-6350     Fax: (704)731-0828     127 S.
Meredith Jennings      Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

2.   **Rent:** Tenant shall pay the Rent, without notice, demand or deduction, to Landlord or as Landlord directs. The first Rent payment, which shall be prorated if the Initial Term commences on a day other than the first day of the Payment Period, shall be due on _____ (date). Thereafter, all rentals shall be paid in advance on or before the **FIRST** day of each subsequent Payment Period for the duration of the tenancy.

3.   **Late Payment Fees and Returned Check Fees:** Tenant shall pay the Late Payment Fee if any rental payment is five (5) days or more late. *This late payment fee shall be due immediately without demand therefor and shall be added to and paid with the late rental payment. Tenant also agrees to pay the Returned Check Fee for each check of Tenant that is returned by the financial institution because of insufficient funds or because the Tenant did not have an account at the financial institution.*

4.   **Tenant Security Deposit:** The Security Deposit shall be administered in accordance with the North Carolina Tenant Security Deposit Act (N.C.G.S. § 42-50 et. seq.). IT MAY, IN THE DISCRETION OF EITHER THE LANDLORD OR THE AGENT, BE DEPOSITED IN AN INTEREST-BEARING ACCOUNT WITH THE BANK OR SAVINGS INSTITUTION NAMED ABOVE. ANY INTEREST EARNED UPON THE TENANT SECURITY DEPOSIT SHALL ACCRUE FOR THE BENEFIT OF, AND SHALL BE PAID TO, THE LANDLORD, OR AS THE LANDLORD DIRECTS. SUCH INTEREST, IF ANY, MAY BE WITHDRAWN BY LANDLORD OR AGENT FROM SUCH ACCOUNT AS IT ACCRUES AS OFTEN AS IS PERMITTED BY THE TERMS OF THE ACCOUNT.

Upon any termination of the tenancy herein created, the Landlord may deduct from the Tenant Security Deposit amounts permitted under the Tenant Security Deposit Act. If there is more than one person listed above as Tenant, Agent may, in Agent's discretion, pay any balance of the Tenant Security Deposit to any such person, and the other person(s) agree to hold Agent harmless for such action. If the Tenant's address is unknown to the Landlord, the Landlord may deduct any permitted amounts and shall then hold the balance of the Tenant Security Deposit for the Tenant's collection for a six-month period beginning upon the termination of the tenancy and delivery of possession by the Tenant. If the Tenant fails to make demand for the balance of the Tenant Security Deposit within the six-month period, the Landlord shall not thereafter be liable to the Tenant for a refund of the Tenant Security Deposit or any part thereof.

If the Landlord removes Agent or Agent resigns, the Tenant agrees that Agent may transfer any Tenant Security Deposit held by Agent hereunder to the Landlord or the Landlord's designee and thereafter notify the Tenant by mail of such transfer and of the transferee's name and address. The Tenant agrees that such action by Agent shall relieve Agent of further liability with respect to the Tenant Security Deposit. If Landlord's interest in the Premises terminates (whether by sale, assignment, death, appointment of receiver or otherwise), Agent shall transfer the Tenant Security Deposit in accordance with the provisions of North Carolina General Statutes § 42-54.

5.   **Tenant's Obligations:** Unless otherwise agreed upon, the Tenant shall:
(a)   use the Premises for residential purposes only and in a manner so as not to disturb the other tenants;
(b)   not use the Premises for any unlawful or immoral purposes or occupy them in such a way as to constitute a nuisance;
(c)   keep the Premises, including but not limited to all plumbing fixtures, facilities and appliances, in a clean and safe condition;
(d)   cause no unsafe or unsanitary condition in the common areas and remainder of the Premises used by him;
(e)   comply with any and all obligations imposed upon tenants by applicable building and housing codes;
(f)   dispose of all ashes, rubbish, garbage, and other waste in a clean and safe manner and comply with all applicable ordinances concerning garbage collection, waste and other refuse;
(g)   use in a proper and reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances, if any, furnished as a part of the Premises;
(h)   not deliberately or negligently destroy, deface, damage or remove any part of the Premises (including all facilities, appliances and fixtures) or permit any person, known or unknown to the Tenant, to do so;
(i)   pay the costs of all utility services to the Premises which are billed directly to the Tenant and not included as a part of the rentals, including, but not limited to, water, electric, telephone, and gas services;
(j)   conduct himself and require all other persons on the Premises with his consent to conduct themselves in a reasonable manner and so as not to disturb other tenants' peaceful enjoyment of the Premises;
(k)   not abandon or vacate the Premises during the Initial Term or any renewals or extensions thereof. Tenant shall be deemed to have abandoned or vacated the Premises if Tenant removes substantially all of his possessions from the Premises; and
(l)   AS SPECIFIED IN THE LEASE/PURCHASE OPTION

_____

_____

_____

Tenant Initials _____   Landlord Initials _____   Page 2 of 7

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

6. **Landlord's Obligations:** Unless otherwise agreed upon, the Landlord shall:
(a) comply with the applicable building and housing codes to the extent required by such building and housing codes;
(b) make all repairs to the Premises as may be necessary to keep the Premises in a fit and habitable condition; provided, however, in accordance with paragraph 11, the Tenant shall be liable to the Landlord for any repairs necessitated by the Tenant's intentional or negligent misuse of the Premises;
(c) keep all common areas, if any, used in conjunction with the Premises in a clean and safe condition;
(d) promptly repair all facilities and appliances, if any, as may be furnished by the Landlord as part of the Premises, including electrical, plumbing, sanitary, heating, ventilating, and air conditioning systems, provided that the Landlord, except in emergency situations, actually receives notification from the Tenant in writing of the needed repairs; and
(e) within a reasonable period of time based upon the severity of the condition, repair or remedy any imminently dangerous condition on the Premises after acquiring actual knowledge or receiving notice of the condition. Notwithstanding Landlord's repair or remedy of any imminently dangerous condition, Landlord may recover from Tenant the actual and reasonable costs of repairs that are the fault of Tenant.

7. **Utility Bills/Service Contracts:** Landlord and Tenant agree that utility bills and service contracts ("Service Obligations") for the Premises shall be paid by the party indicated below as to each Service Obligation. The party agreeing to be responsible for payment of a Service Obligation agrees to timely pay the applicable Service Obligation, including any metering, hook-up fees or other miscellaneous charges associated with establishing, installing and maintaining such utility or contract in that party's name. Within thirty (30) days of the Beginning Date of this Lease, Tenant shall provide Landlord with a copy of any requested information about any Service Obligation for which Tenant has agreed to be responsible. Any Service Obligation not designated below shall be the responsibility of Tenant unless the parties agree otherwise in writing.

| Service obligation | Landlord | Tenant | N/A |
|---|---|---|---|
| Sewer/Septic | ☐ | ☒ | ☐ |
| Water | ☐ | ☒ | ☐ |
| Electric | ☐ | ☒ | ☐ |
| Gas | ☐ | ☒ | ☐ |
| Telephone | ☐ | ☒ | ☐ |
| Security System | ☐ | ☒ | ☐ |
| Trash disposal/dumpster | ☐ | ☒ | ☐ |
| Landscaping | ☐ | ☒ | ☐ |
| Lawn Maintenance | ☐ | ☒ | ☐ |
| ROUTINE POOL MAINTENANCE | ☐ | ☒ | ☐ |
| | ☐ | ☐ | ☐ |
| | ☐ | ☐ | ☐ |

8. **Smoke and Carbon Monoxide Alarms:** Pursuant to North Carolina General Statutes § 42-42, the Landlord shall provide operable smoke alarms, either battery-operated or electrical. If the Premises has a fossil-fuel burning heater, appliance, or fireplace, or an attached garage, the Landlord shall provide and install a minimum of one operable carbon monoxide alarm per level in the Premises, either battery operated or electrical. The Tenant shall notify the Landlord, in writing, of the need for replacement of or repairs to a smoke or carbon monoxide alarm. The Landlord shall replace or repair the smoke or carbon monoxide alarm within 15 days of receipt of notification if the Landlord is notified of needed replacement or repairs in writing by the Tenant. The Landlord shall ensure that a smoke or carbon monoxide alarm is operable and in good repair at the beginning of the Initial Term of the Tenancy.

Tenant Initials _____   Landlord Initials _____   Page 3 of 7

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

STANDARD FORM 410 - T
Revised 7/2014
© 7/2014
127 S.

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

The Landlord shall place new batteries in any battery-operated smoke or carbon monoxide alarms at the beginning of the Initial Term of the tenancy **and the Tenant shall replace the batteries as needed during the tenancy**, except where the smoke alarm is a tamper-resistant, 10-year lithium battery smoke alarm.

9. **Rules and Regulations:** The Tenant, his family, servants, guests and agents shall comply with and abide by all the Landlord's existing rules and regulations and such future reasonable rules and regulations as the Landlord may, at Landlord's discretion, from time to time, adopt governing the use and occupancy of the Premises and any common areas used in connection with them (the "Rules and Regulations"). Landlord reserves the right to make changes to the existing Rules and Regulations and to adopt additional reasonable rules and regulations from time to time; provided however, such changes and additions shall not alter the essential terms of this lease or any substantive rights granted hereunder and shall not become effective until thirty (30) days' written notice thereof shall have been furnished to Tenant. Tenant also agrees to abide by any applicable homeowners' association regulations as they now exist or may be amended. A copy of the existing Rules and Regulations, and any applicable homeowners' association regulations, are attached hereto and the Tenant acknowledges that he has read them. The Rules and Regulations shall be deemed to be a part of this lease giving to the Landlord all the rights and remedies herein provided.

10. **Right of Entry:** Landlord hereby reserves the right to enter the Premises during reasonable hours for the purpose of (1) inspecting the Premises and the Tenant's compliance with the terms of this lease; (2) making such repairs, alterations, improvements or additions thereto as the Landlord may deem appropriate; and (3) showing the Premises to prospective purchasers or tenants. Landlord shall also have the right to display "For Sale" or "For Rent" signs in a reasonable manner upon the Premises.

11. **Damages:** Tenant shall be responsible for and liable to the Landlord for all damage to, defacement of, or removal of property from the Premises whatever the cause, except such damage, defacement or removal caused by ordinary wear and tear, acts of the Landlord, his agent, or of third parties not invitees of the Tenant, and natural forces. Tenant agrees to pay Landlord for the cost of repairing any damage for which Tenant is responsible upon receipt of Landlord's demand therefor, and to pay the Rent during the period the Premises may not be habitable as a result of any such damage.

12. **Pets:** Tenant agrees not to keep or allow anywhere on or about the Premises any animals or pets of any kind, including but not limited to, dogs, cats, birds, rodents, reptiles or marine animals.

13. **Alterations:** The Tenant shall not paint, mark, drive nails or screws into, or otherwise deface or alter walls, ceilings, floors, windows, cabinets, woodwork, stone, ironwork or any other part of the Premises or decorate the Premises or make any alterations, additions, or improvements in, to, on or about the Premises without the Landlord's prior written consent and then only in a workmanlike manner using materials and contractors approved by the Landlord. All such work shall be done at the Tenant's expense and at such times and in such manner as the Landlord may approve. All alterations, additions, and improvements upon the Premises, made by either the Landlord or Tenant, shall become the property of the Landlord and shall remain upon and become a part of the Premises at the end of the tenancy hereby created.

14. **Occupants:** The Tenant shall not allow or permit the Premises to be occupied or used as a residence by any person other than Tenant and the Permitted Occupants.

15. **Rental Application:** In the event the Tenant has submitted a Rental Application in connection with this lease, Tenant acknowledges that the Landlord has relied upon the Application as an inducement for entering into this Lease and Tenant warrants to Landlord that the facts stated in the Application are true to the best of Tenant's knowledge. If any facts stated in the Rental Application prove to be untrue, the Landlord shall have the right to terminate the tenancy and to collect from Tenant any damages resulting therefrom.

16. **Tenant's Duties Upon Termination:** Upon any termination of the Tenancy created hereby, whether by the Landlord or the Tenant and whether for breach or otherwise, the Tenant shall: (1) pay all utility bills due for services to the Premises for which he is responsible and have all such utility services discontinued; (2) vacate the Premises removing therefrom all Tenant's personal property of whatever nature; (3) properly sweep and clean the Premises, including plumbing fixtures, refrigerators, stoves and sinks, removing therefrom all rubbish, trash, garbage and refuse; (4) make such repairs and perform such other acts as are necessary to return the Premises, and any appliances or fixtures furnished in connection therewith, in the same condition as when Tenant took possession of the Premises; provided, however, Tenant shall not be responsible for ordinary wear and tear or for repairs required by law or by paragraph 6 above to be performed by Landlord; (5) fasten and lock all doors and windows; (6) return to the Landlord all keys to the Premises; and (7) notify the Landlord of the address to which the balance of the Security Deposit may be returned. If the Tenant fails to sweep out and clean the Premises, appliances and fixtures as herein provided, Tenant shall become liable, without notice or demand, to the Landlord for the actual costs of cleaning (over and above ordinary wear and tear), which may be deducted from the Security Deposit as provided in paragraph 4 above.

Tenant Initials _____ Landlord Initials _____    Page 4 of 7

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    127 S.

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

**17.  Tenant's Breach:**

(a)  **Events Constituting Breach:** It shall constitute a breach of this Agreement if Tenant fails to:

    (i)      pay the full amount of rent herein reserved as and when it shall become due hereunder; or

    (ii)     perform any other promise, duty or obligation herein agreed to by him or imposed upon him by law and such failure shall continue for a period of five (5) days from the date the Landlord provides Tenant with written notice of such failure.

In either of such events and as often as either of them may occur, the Landlord, in addition to all other rights and remedies provided by law, may, at its option and with or without notice to Tenant, either terminate this lease or terminate the Tenant's right to possession of the Premises without terminating this lease.

(b)  **Landlord's Right to Possession:** Regardless of whether Landlord terminates this lease or only terminates the Tenant's right of possession without terminating this lease, Landlord shall be immediately entitled to possession of the Premises and the Tenant shall peacefully surrender possession of the Premises to Landlord immediately upon Landlord's demand. In the event Tenant shall fail or refuse to surrender possession of the Premises, Landlord shall, in compliance with Article 2A of Chapter 42 of the General Statutes of North Carolina, reenter and retake possession of the Premises only through a summary ejectment proceeding.

(c)  **Summary Ejectment Fees:** If a summary ejectment proceeding is instituted against Tenant, in addition to any court costs and past-due rent that may be awarded, Tenant shall be responsible for paying Landlord the relevant Complaint-Filing Fee, Court Appearance Fee or Second Trial Fee in accordance with NC General Statutes § 42-46.

(d)  **Acceptance of Partial Rent:** Tenant acknowledges and understands that Landlord's acceptance of partial rent or partial housing subsidy will not waive Tenant's breach of this Agreement or limit Landlord's rights to evict Tenant through a summary ejectment proceeding, whether filed before or after Landlord's acceptance of any such partial rent or partial housing subsidy.

(e)  **Termination of Lease:** In the event Landlord terminates this lease, all further rights and duties hereunder shall terminate and Landlord shall be entitled to collect from Tenant all accrued but unpaid rents and any damages resulting from the Tenant's breach.

(f)  **Termination of Tenant's Right of Possession:** In the event Landlord terminates the Tenant's right of possession without terminating this lease, Tenant shall remain liable for the full performance of all the covenants hereof, and Landlord shall use reasonable efforts to re-let the Premises on Tenant's behalf. Any such rentals reserved from such re-letting shall be applied first to the costs of re-letting the Premises and then to the rentals due hereunder. In the event the rentals from such re-letting are insufficient to pay the rentals due hereunder in full, Tenant shall be liable to the Landlord for any deficiency. In the event Landlord institutes a legal action against the Tenant to enforce the lease or to recover any sums due hereunder, Tenant agrees to pay Landlord reasonable attorney's fees in addition to all other damages.

**18.  Landlord's Default; Limitation of Remedies and Damages:** Until the Tenant notifies the Landlord in writing of an alleged default and affords the Landlord a reasonable time within which to cure, no default by the Landlord in the performance of any of the promises or obligations herein agreed to by him or imposed upon him by law shall constitute a material breach of this lease and the Tenant shall have no right to terminate this lease for any such default or suspend his performance hereunder. In no event and regardless of their duration shall any defective condition of or failure to repair, maintain, or provide any area, fixture or facility used in connection with recreation or recreational activities, including but not limited to swimming pools, club houses, and tennis courts, constitute a material breach of this lease and the Tenant shall have no right to terminate this lease or to suspend his performance hereunder. In any legal action instituted by the Tenant against the Landlord, the Tenant's damages shall be limited to the difference, if any, between the rent reserved in this lease and the reasonable rental value of the Premises, taking into account the Landlord's breach or breaches, and in no event, except in the case of the Landlord's willful or wanton negligence, shall the Tenant collect any consequential or secondary damages resulting from the breach or breaches, including but not limited to the following items: damage or destruction of furniture or other personal property of any kind located in or about the Premises, moving expenses, storage expenses, alternative interim housing expenses, and expenses of locating and procuring alternative housing.

**19.  Bankruptcy:** If any bankruptcy or insolvency proceedings are filed by or against the Tenant or if the Tenant makes any assignment for the benefit of creditors, the Landlord may, at his option, immediately terminate this Tenancy, and reenter and repossess the Premises, subject to the provisions of the Bankruptcy Code (11 USC Section 101, et. seq.) and the order of any court having jurisdiction thereunder.

**20.  Tenant's Insurance; Release and Indemnity Provisions:**

(a)  **Personal Property Insurance (*Tenant initial if applicable\**):**

               Tenant shall be required to obtain and maintain throughout the term of the tenancy a renter's insurance policy and to promptly provide Landlord evidence of such insurance upon Landlord's request. In addition to coverage for damage or loss to Tenant's personal property in such amount as Tenant may determine, the policy shall include coverage for bodily injury and property damage for which Tenant may be liable in the amount of _____
*If not initiated, Tenant shall not be required to obtain a renter's insurance policy*

(b)  Whether or not Tenant is required to obtain a renter's insurance policy, Tenant shall be solely responsible for insuring any of this personal property located or stored upon the Premises upon the risks of damage, destruction, or loss resulting from theft, fire, storm and all other hazards and casualties. Regardless of whether the Tenant secures such insurance, the Landlord and his agents shall

Tenant Initials _____  Landlord Initials _____

Page 5 of 7

STANDARD FORM 410 - T
Revised 7/2014
© 7/2014

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

127 S.

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

not be liable for any damage to, or destruction or loss of, any of the Tenant's personal property located or stored upon the Premises regardless of the cause or causes of such damage, destruction, or loss, unless such loss or destruction is attributable to the intentional acts or willful or wanton negligence of the Landlord.

(c)   The Tenant agrees to release and indemnify the Landlord and his agents from and against liability for injury to the person of the Tenant or to any members of his household resulting from any cause whatsoever except only such personal injury caused by the negligent, or intentional acts of the Landlord or his agents.

21.  **Agent:** The Landlord and the Tenant acknowledge that the Landlord may, from time to time in his discretion, engage a third party ("the Agent") to manage, supervise and operate the Premises or the complex, if any, of which they are a part. If such an Agent is managing, supervising and operating the Premises at the time this lease is executed, his name will be shown as "Agent" on the first page hereof. With respect to any Agent engaged pursuant to this paragraph, the Landlord and the Tenant hereby agree that: (1) Agent acts for and represents Landlord in this transaction; (2) Agent shall have only such authority as provided in the management contract existing between the Landlord and Agent; (3) Agent may perform without objection from the Tenant, any obligation or exercise any right of the Landlord imposed or given herein or by law and such performance shall be valid and binding, if authorized by the Landlord, as if performed by the Landlord; (4) the Tenant shall pay all rentals to the Agent if directed to do so by the Landlord; (5) except as otherwise provided by law, the Agent shall not be liable to the Tenant for the nonperformance of the obligations or promises of the Landlord contained herein; (6) nothing contained herein shall modify the management contract existing between the Landlord and the Agent; however, the Landlord and the Agent may from time to time modify the management agreement in any manner which they deem appropriate; (7) the Landlord, may, in his discretion and in accordance with any management agreement, remove without replacing or remove and replace any agent engaged to manage, supervise and operate the Premises.

22.  **Form:** The Landlord and Tenant hereby acknowledge that their agreement is evidenced by this form contract which may contain some minor inaccuracies when applied to the particular factual setting of the parties. The Landlord and Tenant agree that the courts shall liberally and broadly interpret this lease, ignoring minor inconsistencies and inaccuracies, and that the courts shall apply the lease to determine all disputes between the parties in the manner which most effectuates their intent as expressed herein. The following rules of construction shall apply: (1) handwritten and typed additions or alterations shall control over the preprinted language when there is an inconsistency between them; (2) the lease shall not be strictly construed against either the Landlord or the Tenant; (3) paragraph headings are used only for convenience of reference and shall not be considered as a substantive part of this lease; (4) words in the singular shall include the plural and the masculine shall include the feminine and neuter genders, as appropriate; and (5) the invalidity of one or more provisions of this lease shall not affect the validity of any other provisions hereof and this lease shall be construed and enforced as if such invalid provision(s) were not included.

23.  **Amendment of Laws:** In the event that subsequent to the execution of this lease any state statute regulating or affecting any duty or obligation imposed upon the Landlord pursuant to this lease is enacted, amended, or repealed, the Landlord may, at his option, elect to perform in accordance with such statute, amendment, or act of repeal in lieu of complying with the analogous provision of this lease.

24.  **Eminent Domain and Casualties:** The Landlord shall have the option to terminate this lease if the Premises, or any part thereof, are condemned or sold in lieu of condemnation or damaged by fire or other casualty.

25.  **Assignment:** The Tenant shall not assign this lease or sublet the Premises in whole or part.

26.  **Waiver:** No waiver of any breach of any obligation or promise contained herein shall be regarded as a waiver of any future breach of the same or any other obligation or promise.

27.  **Joint and Several Liability:** If there are multiple persons listed as Tenant, their obligations under this Agreement shall be joint and several.

28.  **Other Terms and Conditions:**

(a)  If there is an Agent involved in this transaction, Agent hereby discloses to Tenant that Agent is acting for and represents Landlord.

(b)  Itemize all addenda to this Contract and attach hereto:

- ☐ Disclosure of Information on Lead-Based Paint and Lead-Based Paint Hazards (form 430-T) (if Premises built prior to 1978)
- ☐ Maintenance Addendum (form 440-T)
- ☐ Early Termination by Military Personnel Addendum (form 441-T)
- ☐ Pet Addendum (form 442-T)
- ☒ OTHER: <u>LEASE/PURCHASE OPTION</u>

Tenant Initials _____   Landlord Initials _____   Page 6 of 7

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

(c)  The following additional terms and conditions shall also be a part of this lease:  ___SEE LEASE/PURCHASE OPTION___
___AGREEMENT_____
_____
_____
_____
_____

29.  **Inspection of Premises:** Within ____2____ days of occupying the Premises, Tenant has the right to inspect the Premises and complete a Move-in Inspection Form.

30.  **Notice:** Any notices required or authorized to be given hereunder or pursuant to applicable law shall be mailed or hand delivered to the following addresses:
Tenant: the address of the Premises
Landlord: the address to which rental payments are sent.

31.  **Execution; Counterparts:** When Tenant signs this lease, he acknowledges he has read and agrees to the provisions of this lease. This lease is executed in _____ (number) counterparts with an executed counterpart being retained by each party.

32.  **Entire Agreement:** This Agreement contains the entire agreement of the parties and there are no representations, inducements or other provisions other than those expressed in writing. All changes, additions or deletions hereto must be in writing and signed by all parties.

THE NORTH CAROLINA ASSOCIATION OF REALTORS®, INC. MAKES NO REPRESENTATION AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION OF THIS FORM IN ANY SPECIFIC TRANSACTION.

TENANT:                                              (SEAL)       LANDLORD:                                              (SEAL)
DIGNITY RESIDENTIAL, LLC                                        PHILIP SALICE
Date: _____                                   PATRICE SALICE                                         (SEAL)

_____ (SEAL)                         By: _____ , AGENT

Date: _____                                   _____ (SEAL)

_____ (SEAL)                         Date: ___6/20/15___

Date: _____

_____ (SEAL)

Date: _____

STANDARD FORM 410 - T
Revised 7/2014
© 7/2014
127 S.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

IN WITNESS WHEREOF, Tenant has caused these presents to be signed in person this, the
_19th_ day of _June_, 20_15_ with Landlord's signature on the previous page.

TENANT: Dignity Residential, LLC

By: _R. S. Owens_____ (SEAL)

State of ___Ohio___
County of ___Trumbull___

I, a Notary Public of the County and State aforesaid, certify that
___Reema Owens___ as the Member/ Manager of Dignity Residential, LLC a North
Carolina limited liability company personally appeared before me this day and acknowledged
the execution of the foregoing instrument on behalf of the company

WITNESS my hand and official seal this the _19_ day of _June_, 20_15_

(SEAL)

_____
Notary Public
My Commission Expires: _6-18-2017_

The foregoing Certificate of _____, a Notary Public of
_____ County, North Carolina, is certified to be correct. This instrument was presented for
registration this _____ day of _____, _____, at _____
o'clock ____ m., and was recorded in the office of the Register of Deeds of
_____ County, North Carolina, in Book _____, at Page _____.

_____
_____, Register of Deed

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE640CB91

## GUARANTY OF LEASE

In consideration of the making of the within Lease by Lessor, and the sum of $1.00 paid by the Lessor to the undersigned, receipt of which is acknowledged, the undersigned (jointly and severally, if more than one) hereby unconditionally guarantees to the Lessor, its successors and assigns, the payment by the Lessee, of all rents fixed in the attached Lease and the performance by the Lessee of all the terms and provisions of the Lease and any fully executed amendments, modifications, addenda or additions, as if it had itself executed said Lease as Lessee and, upon any default by Lessee, agrees to perform each and every obligation of Lessee under this Lease or any renewal, modification, assignment, subletting or extension thereof, including, but not limited to the payment of such sum(s) of money as may be due.

This guaranty is absolute and unconditional and shall not be affected or diminished by an assignment of the attached Lease or subletting of the Leased Premises. The rights herein granted shall be in addition to any rights of the Lessor against the Lessee, and shall exist regardless of any reentry of the Leased Premises by the Lessor and shall not be waived by any failure on the part of the Lessor to assert rights or remedies against the Lessee. The Guarantor(s) hereby warrant(s) that they have a financing interest in the Lessee aforesaid.

In the event enforcement of this guaranty is referred to an attorney, guarantor agrees to pay, in addition to other amounts owed hereunder, all costs and expenses of legal proceedings including reasonable attorneys fees incurred in pursuing rights and remedies available to the Lessor or its assigns.

In the testimony whereof, this guaranty has been duly executed under seal as of the same day and year as the Lease to which this guaranty is attached.


GUARANTOR(S):

_____(SEAL)        _____(SEAL)
Print Name and Address:                          Print Name and Address:

# EXHIBIT B

DocuSign Envelope ID: F0448402-35FE-4DAE-8608-91ABE840CB91

STATE OF NORTH CAROLINA              OPTION TO PURCHASE CONTRACT

MECKLENBURG COUNTY

    This Option to Purchase Agreement is made and entered into this ___30___ day of, 2015, by June and between Philip Salice and Patrice Salice of_____ (hereinafter referred to as "Lessor" or "Seller"), and Dignity Residential, LLC, a North Carolina limited liability company, with a mailing address of 7209 East WT Harris Blvd., Suite 219, Charlotte, NC 28227 (hereinafter referred to as "Lessee" or "Purchaser").

WITNESSETH

    Subject to the following terms and conditions, Lessor does hereby lease to Lessee with an Option to Purchase and Lessee does hereby accept of Lessor that certain tract or parcel of land, lying and being in Town of Mooresville, Iredell County, and being commonly known as 127 South Longfellow Lane, Mooresville, NC 28117 (hereinafter, "the Property"), and being more particularly described as follows:

    BEING all of Lot 1217, THE POINT Subdivision, Phase 12, as shown on a map thereof recorded in Map book 43 at Page 106 in the Iredell County Public Registry.

**This Agreement is governed by the terms of North Carolina General Statute Chapter 47G, "Option To Purchase Contracts Executed With Lease Agreements." The terms and conditions of said Agreement are as follows:**

The Lease shall be for a term of twelve (12) months (the "Lease Term"). Lessee/Purchaser shall take occupancy of the property August 1, 2015 and rent shall commence on August 1, 2015. Lessee shall pay to Lessor/Seller the sum of Ten Thousand and no/100 dollars ($10,000.00) per month in rental, payable on or before the first day of each month beginning August 1, 2015, for the term of the lease term. Rent for any partial month of occupancy shall be prorated accordingly.

    The Lease Term shall begin August 1, 2015 and end July 31, 2016. The Option to Purchase shall remain valid and enforceable for the entire term of the leasehold provided Lessee/Purchasers pays all sums due as outlined below.

    Lessee/Purchaser shall have the exclusive right to purchase the property at any time during the option period, which option period shall be defined as running concurrently with the Lease Term, provided that Lessee/Purchaser shall give Lessor/Seller a minimum of thirty (30) days' notice of Purchaser's decision to exercise said Option. At the time notice of intent to close is given, Purchaser shall forward a loan approval letter to Seller. Closing on the property shall occur no later than July 31, 2016, time being of the essence with respect to this date. Upon the successful closing of the real property, the lease shall become null and void.

    Lessee shall have a five day grace period to remit monthly rental payments to Lessor. If lessee has not tendered payment by the 5th of the month, Lessee shall pay Lessor a late fee of 5% of the payment due.

**The purchase price for the real property shall be Three Million One Hundred Seventy-Two Thousand and no/100 dollars ($3,172,000.00).**

DocuSign Envelope ID: F0448402-36FE-4DAE-8608-91ABE640CB91

In addition to the regular monthly rentals, Lessee/Purchaser shall pay the following fee(s) to Lessor/Seller: (1) A refundable Ten Thousand and no/100 dollars ($10,000.00) Security Deposit under the terms indicated in the Residential Lease agreement between the parties and made a part of this agreement.. (2) A non-refundable Option Fee of One Hundred and fifteen Thousand and no/100 dollars ($115,000.00) due at the execution of this agreement; (3) A non-refundable Option Fee of Fifty Thousand and no/100 dollars ($50,000.00) on or before December 31, 2015.

Lessee/Purchaser shall have the right to personally order an appraisal of the Subject Property at any time during the Option Term, should they so desire. All parties acknowledge that, regardless of any appraisal previously ordered, Lessee/Purchaser's Lender shall also order an appraisal during the pre-closing process. The cost of the appraisals shall be borne in full by Lessee/Purchaser.

The Option Fees shall be credited to the purchase price in the event Lessee/Purchaser elects to exercise the Option to Purchase contained herein, if Lessee/Purchaser fails to exercise its Option to Purchase, or should this Agreement otherwise terminate prior to the end of the option period, Purchaser's Option Fees and all accrued monthly rental payments shall be forfeited to Seller.

In the event Lessor/Seller defaults or fails to perform any of the conditions or obligations as Seller relating to the Option to Purchase, Lessee/Purchaser shall have the right to enforce an action in equity for specific performance, in addition to all other rights and remedies available at law or in equity. Additionally, in the event of a default by Lessor/Seller with respect to any mortgage affecting the property, Lessee/Purchase Purchaser shall have all rights afforded pursuant to N.C.G.S. 47G-6.

**Seven Thousand Three Hundred Thirty-Three and 33/100 dollars ($7,333.33) of each monthly rental payment shall be credited to the purchase price as an additional Option Fee paid directly to the Seller in theevent Lessee/Purchaser elects to exercise the Option to Purchase contained herein, which shall also be applied to reduce the amount due at closing.** If Lessee/Purchaser fails to exercise its Option to Purchase, or should this Agreement otherwise terminate prior to the end of the option period, no credit shall be provided to Purchaser and Purchaser shall be due no refund of any rental or option fees paid during the Term.

On or before August 1, 2015, Lessee/Purchaser shall have all home inspections and pest inspections completed to their satisfaction and at their expense. Lessee/Purchaser and Lessor/Seller shall agree in writing prior to August 1, 2015 what repairs, if any, shall be completed at the expense of Lessor/Seller. No later than August 1, 2015, a Home Warranty from Americas Preferred Home Warranty shall be purchased and paid for by Seller, which will cover the property for the Lease Term, at a cost not to exceed $500 per year.

Upon taking occupancy, Lessee/Purchaser assumes all responsibility for ordinary maintenance, repairs and upkeep of the property, including routine pool maintenance and all lawn maintenance. Lessee/Purchaser shall be responsible for paying all trip charges/deductibles in relation to claims under the Home Warranty, and any individual repairs not covered by the Home Warranty up to $500 per repair. Lessor/Seller shall be responsible for any repairs not covered by the Home Warranty over $500.00 per repair.

Lessor/Seller shall maintain hazard insurance for the property during the Lease Term, the form and substance of such policy, including all coverage amounts, shall be reasonably acceptable to Lessee/Purchaser. In the event of a casualty or other occurrence covered under such policy, Lessor/Seller

DocuSign Envelope ID: F0446402-36FE-4DAE-8606-91ABE640CB81

agrees to pay all required deductibles and permit any insurance proceeds to be used toward the restoration of the property. Lessee/Purchaser is required to obtain and demonstrate proof of an insurance policy sufficient to insure all of Lessee/Purchaser's contents and belongings to be situated in, on or about the Property. Lessee/Purchaser further agrees to demonstrate proof of an "umbrella policy" to be purchased by Lessee/Purchaser with liability coverage sufficient to satisfy Lessor/Seller. Lessee/Purchaser's payment for this insurance item does not constitute a reduction in the Purchase Price referenced herein.

Lessor/Seller warrants that property taxes on the real property in the amount of $16,234.14 were paid for the year 2014 and further covenants that they shall continue to pay the property taxes until such time as Lessee/Purchaser exercises the Option contained herein.

Lessor/Seller warrants that Homeowners Association Dues in the amount of $1,255.00 annually currently paid through June of 2015. Lessee/Purchaser shall keep all Homeowners Dues current until such time as Lessee/Purchaser elects to exercise the Option contained herein or until such time as Lessee/Purchaser vacates the property. In the event Lessee/Purchaser fails to exercise the Option to Purchase contained herein and such Homeowners Dues have been paid in advance, Lessee/Purchaser shall be entitled to a pro-rata refund of any dues paid beyond the date of occupancy. Lessee/Purchaser shall be entitled to full use of all amenities in the neighborhood provided by the Homeowners Association.
Lessee/Purchaser will also pay the monthly Trump social membership dues and shall provide proof of such payment to Lessor/Seller each month.

Unless Lessee/Purchaser shall elect to purchase under the terms of this agreement, it shall, prior to midnight on the last day of the lease term, deliver said property in the possession of Lessor/Seller in as good condition as the same is now, ordinary wear and tear accepted.

**It is agreed that if Lessee/Purchaser does not elect to purchase under the terms of this contract, all improvements and repairs upon the property made by Lessee/Purchaser shall be considered a part of the real estate and taken as additional rental.**
**Lessee/Purchaser hereby waives any claim for reimbursement for any such improvements and/or repairs.**

In the event of Lessee/Purchaser's material breach of this Agreement or the accompanying Lease Agreement, Lessor/Seller shall notify Lessee/Purchaser of said breach by hand delivery, certified or overnight mail of said breach. Lessee/Purchaser shall have the right once in each twelve (12) month period of the Lease Term to thirty (30) days to cure such a breach. Any further breach during each twelve (12) month period must be cured within ten (10) days of receipt of notice of said breach. By the due execution of this Agreement, Lessee/Purchaser specifically acknowledges that failure to cure such a material breach of this Agreement or the accompanying Lease Agreement within the cure periods outlined above shall result in the termination of this Agreement and all rights herein shall be null and void and all fees, deposits, payments and earnest monies shall be retained by Lessor/Seller as nonrefundable earnest money.

Lessee/Purchaser hereby agrees that should either party terminate this Agreement prior to the end of the Lease Term by any means other than the exercise of Lessee/Purchaser's exercise of the Option to Purchase, Lessee/Purchaser shall execute a Release of Option in form and substance suitable for recording in Iredell County, North

DocuSign Envelope ID: F0448402-36FE-4DAE-8608-91ABE640CB91

Carolina. Lessee/Purchaser expressly acknowledges that the failure to do so will result in significant harm to Lessor/Seller, and that Lessor/Seller shall have all legal and equitable means available, including injunctive relief, to enforce this provision. In the event Lessor/Seller must hire an attorney to terminate Lessee/Purchaser's rights to the property in court, Lessee/Purchaser will be liable for all attorneys' fees incurred by Lessor/Seller for this purpose.

The parties expressly warrant that at all times Lessor/Seller has been represented by Jodie Widaseck, Broker for Trump International and Lessee/Purchaser has been represented by Donald and Meredith Jennings, Brokers for Lake Realty. Upon receipt of the initial Option Fee and Lessee/Purchaser taking occupancy of the property, Lessor/Seller shall pay Lake Realty a one and one-half percent (1 ½%) commission of the lease-option contract amount of $295,000, or $4,425.00. In the event Lessee/Purchaser exercises the Option to Purchase contained herein, upon closing a three percent (3%) commission shall be paid from Seller's proceeds to Lake Realty less $4,425.00 and a two percent (2%) commission shall be paid to Trump International. If Lessee/Buyer elects not to purchase the Property then any and all commissions paid in advance shall be reimbursed to Lessor/Seller.

If this Agreement and the accompanying Lease Agreement conflict in any way, the terms of this Agreement shall govern.

The purchaser has the right to cancel the option contract until midnight of the third business day following execution of the option contract or delivery of a copy of the option contract, with the required minimum disclosures, whichever occurs last. If the purchaser cancels the option contract, the seller shall, not later than the tenth day after the date the seller receives the purchaser's notice of cancellation, return to the purchaser any and all property exchanged or payments made by the purchaser under the option contract minus an offset of an amount equal to the fair rental value of the use of the property during the duration of the purchaser's possession of the property plus an amount necessary to compensate the seller for any damages caused to the property by the purchaser beyond normal wear and tear.

## EXISTING LIEN DISCLOSURE

**THIS PROPERTY HAS EXISTING LIENS ON IT. IF THE LESSOR/SELLER FAILS TO MAKE TIMELY PAYMENTS TO THE LIEN HOLDER, THE LIEN HOLDER MAY FORECLOSE ON THE PROPERTY, EVEN IF YOU HAVE MADE ALL YOUR PAYMENTS.**

**Acknowledged by Lessee/Buyer prior to executing the LEASE WITH OPTION TO PURCHASE AGREEMENT.**

BY: _____ (SEAL)
Lessee/Buyer

DocuSign Envelope ID: F0448402-36FE-4DAE-8606-91ABE840CB91

The parties acknowledge that this, together with the Residential Lease Agreement signed contemporaneously herewith, is their complete agreement, and that no oral agreements shall be binding. In witness whereof, the parties hereto have duly executed this Option to Purchase Agreement and have hereunto set their seals, this ___ day of ___ , 2015.

LESSOR/SELLER

Philip Salice

Patrice Salice

LESSEE/PURCHASER

_____

Dignity Residential, LLC, a North Carolina
limited liability company

By: _____
Keena Owens, Member

# EXHIBIT C

## AMENDMENT TO OPTION TO PURCHASE AGREEMENT

THIS AMENDMENT TO OPTION TO PURCHASE AGREEMENT (the "Amendment"), made effective as of the 14th day of December, 2015, by and between Philip Salice and Patrice Salice (hereinafter referred to as "Lessor" or "Seller"), and Dignity Residential, LLC, a North Carolina limited liability company (hereinafter referred to as "Lessee" or "Purchaser").

### WITNESSETH:

WHEREAS, the parties entered into an Option to Purchase Agreement dated June 20, 2015 (the "Agreement"), with respect that tract or parcel of land, lying and being in Town of Mooresville, Iredell County, and being commonly known as 127 South Longfellow Lane, Mooresville NC 28117 (hereinafter, "the Property"); and

WHEREAS, Lessee/Purchaser desires to extend the term under said Agreement; and

WHEREAS, the parties desire to mutually amend the Agreement to include such extended term; and

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, and for other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereby agree as follows:

The non-refundable Option Fee of Fifty Thousand and no/100 dollars ($50,000.00) due on December 31, 2015 is hereby changed as follows: The amount of said payment is increased to Sixty Thousand and no/100 dollars ($60,000.00) and the due date is changed to February 1, 2016.

Except insofar as the terms of this Amendment conflict with the Agreement, the parties agree that all remaining terms and conditions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have amended this Agreement the day and year referenced above.

LESSOR/SELLER

Philip Salice

Patrice Salice

LESSEE/PURCHASER

Dignity Residential, LLC

By: Reena Owens, Member

# EXHIBIT D

BTM:689747v1

## SECOND AMENDMENT TO
## OPTION TO PURCHASE AGREEMENT

THIS SECOND AMENDMENT TO OPTION TO PURCHASE AGREEMENT (the "Amendment"), made effective as of the 13th day of ___May___, 2016, by and between Philip Salice and Patrice Salice (hereinafter referred to as "Lessor" or "Seller"), and Dignity Residential, LLC, a North Carolina limited liability company (hereinafter referred to as "Lessee" or "Purchaser").

### WITNESSETH:

WHEREAS, the parties entered into an Option to Purchase Agreement dated June 20, 2015 (the "Agreement"), with respect that tract or parcel of land, lying and being in Town of Mooresville, Iredell County, and being commonly known as 127 South Longfellow Lane, Mooresville NC 28117 (hereinafter, "the Property"); and

WHEREAS, Lessee/Purchaser desires to extend the term under said Agreement; and

WHEREAS, the parties desire to mutually amend the Agreement to include such extended term; and

NOW, THEREFORE, in consideration of the mutual covenants hereinafter set forth, and for other good and valuable consideration, the receipt and legal sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereby agree as follows:

1. Additional non-refundable Option Fees shall be paid as follows:

   a. $2,500.00 on or before February 16, 2017 (February 28, 2017);
   b. $5,000.00 on or before March 1, 2017 (March 31, 2017);
   c. $5,000.00 on or before April 1, 2017 (April 15, 2017);
   d. $5,000.00 on or before April 16, 2017 (April 30, 2017);
   e. $10,000.00 on or before May 1, 2017 (May 31, 2017).

2. Upon receipt of each additional Option Fee, the closing date shall be extended through the corresponding parenthetical date referenced above, through May 31, 2017.

3. In the event Purchaser closes on the property, all additional Option Fees shall be credited against the Purchase Price at closing as additional Earnest Money.

4. Purchaser may, at its sole option, assign the Agreement to Reema Owens individually in the event doing so is a Lender requirement prior to closing.

Except insofar as the terms of this Amendment conflict with the Agreement, the parties agree that all remaining terms and conditions of the Agreement shall remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have amended this Agreement the day and year referenced above.

LESSOR/SELLER                                    LESSEE/PURCHASER

Philip Salice                                    Dignity Residential, LLC

Patrice Salice                                   By: _____
                                                      Reema Owens, Member

# EXHIBIT E

**From:** Ben Thomas <ben@tgclaw.com>
    **To:** 'john@attorneyjohnsnyder.com' <john@attorneyjohnsnyder.com>; Sandy Knox <sknoxlaw@aol.com>
    **Cc:** jwidaseck <jwidaseck@trumpic.com>; Phil Salice (phils208@aol.com) <phils208@aol.com>
**Subject:** RE: Dignity Residential from Salice /127 South Longfellow
    **Date:** Wed, Apr 26, 2017 7:38 pm

---

Please consider this email as notice that the Salice's are terminating the Lease agreement as of May 31th, 2017 and Buyer must vacate the property on or before such date. The Salice's will accept another $10,000.00 extension fee by 5:00pm May 1st to give Buyer until 5:00 pm May 31, 2017 to close however, if the closing does not occur by that time the lease ends on May 31st.

Buyer must still pay the rent for May when due. Of course, if the May rent is not paid when due the Buyer shall lose the right to purchase and will then have only ten days to vacate the property.

Thanks.

Ben S. Thomas
Attorney
THOMAS & GODLEY, PLLC
514 Williamson Road, Suite 421
Mooresville, NC 28117
Phone: 704-663-1600
Fax: 704-663-5097
Email: ben@tgclaw.com

This message (along with any attachments) contains information from the Thomas & Godley, PLLC law firm that may be PRIVILEGED and CONFIDENTIAL or subject to attorney-client privilege. The information is intended solely for the use of the addressee(s) and may contain privileged and/or confidential information that is exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that you should not read any further, and any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received it in error, please notify ben@tgclaw.com **immediately, and immediately delete this transmission.**

IRS CIRCULAR 230 NOTICE: In order to comply with certain IRS regulations regarding tax advice, we inform you that, unless expressly stated otherwise, any tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for purposes of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party.

Electronic Mail is not secure, may not be read every day, and should not be used for urgent or sensitive issues. Thank you.

**From:** Ben Thomas
**Sent:** Monday, February 6, 2017 1:19 PM
**To:** 'john@attorneyjohnsnyder.com' <john@attorneyjohnsnyder.com>; Sandy Knox <sknoxlaw@aol.com>
**Cc:** 'jwidaseck@trumpic.com' <jwidaseck@trumpic.com>; Phil Salice (phils208@aol.com) <phils208@aol.com>
**Subject:** Dignity Residential from Salice /127 South Longfellow

# EXHIBIT F

From: phils208 <phils208@aol.com>
   To: donna <donna@sandraknoxlaw.com>
Subject: Fwd: Dignity Residential/Owens/ Salice
   Date: Wed, Jul 5, 2017 12:43 pm

-----Original Message-----
From: phils208 <phils208@aol.com>
To: ben <ben@tgclaw.com>; sknoxlaw <sknoxlaw@aol.com>; rrowens28 <rrowens28@aol.com>; jwidaseck <jwidaseck@trumpic.com>; donaldnjennings <donaldnjennings@gmail.com>
Sent: Wed, Jul 5, 2017 12:39 pm
Subject: Dignity Residential/Owens/ Salice

Dignity Residential from Salice /127 South Longfellow

Please consider this letter as final notice to the termination of all agreements between Dignity Residential/Reema Owens and the Salice's regarding the purchase/sale/ or lease of the property at 127 South Longfellow lane, Mooresville NC. With the payments of 10,000 for rent and 10,000 toward the buy down received on July 3, 2017 the Salice's have agreed to allow for the closing to take place on or before July 31, 2017.  Please be advised that Patrice and Philip Salice are terminating the Lease agreement along with the purchase agreement as of July 31th, 2017 and Buyer must purchase or vacate the property on or before such date.   Please be advised there will not be an extension given for one additional day for any reason.

Thank You,
Philip and Patrice Salice
704-662-0331

*This letter was also hand Delivered to REEMa at 127 South longfellow.*

*This letter was Sent to
Sandra Knox -
Donna - (Sandra's cessistant)
Ben (our attorney)
Don Jennings (REEMa's Real Estate Broker
Jovi - (our Broker)
REEMa Owens)*

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Bankruptcy No. 17-50696 |
| DIGNITY RESIDENTIAL LLC | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **NOTICE OF HEARING and MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR IN THE ALTERNATIVE FOR DISMISSAL OF THE CASE FOR LACK OF GOOD FAITH** was served upon the following parties by mailing such copy by first class, postage prepaid mail addressed as follows:

Robert Lewis, Jr.
The Lewis Law Firm, P.A.
P.O. Box 1446
Raleigh, NC  27602

Bankruptcy Administrator
402 W. Trade Street
Suite 200
Charlotte, NC  28202

Dignity Residential, LLC
127 South Longfellow Lane
Mooresville, NC  28117
ATTN:  Reema Owens

Notice electronically sent to:

Bankruptcy Administrator
Robert Lewis, Jr.

This the 15th day of November, 2017.

/s/Ashley S. Rusher
Ashley S. Rusher, NCSB #14296
*Attorney for the Salices*

BTM:689747v1

OF COUNSEL:

BLANCO TACKABERY
& MATAMOROS, P.A.
P. O. Drawer 25008
Winston-Salem, NC 27114-5008
Telephone: (336) 293-9000
Facsimile: (336) 293-9030
E-mail: asr@blancolaw.com